R.V., Appellant,

v.

COMMONWEALTH of Kentucky, DE-
PARTMENT FOR HEALTH AND
FAMILY SERVICES; and A.J.V., A
Child, Appellees.

and

A.V., Appellant,

v.

Commonwealth of Kentucky, Depart-
ment for Health and Family Services;
and A.J.V., A Child, Appellees.

Nos. 2006–CA–001464–ME,
2006–CA–001551–ME.

Court of Appeals of Kentucky.

Aug. 24, 2007.

Rehearing Denied Oct. 29, 2007.

Discretionary Review Denied by
Supreme Court Feb. 13, 2008.

William C. Adams, III, Murray, KY, for
appellant, R.V.

Gregory Taylor, Murray, KY, for appel-
lant, A.V.

Kristy Abel Fulkerson, Owensboro, KY,
for Health and Family Services.

Dilissa Milburn, Mayfield, KY, for The
Cabinet for Health and Family Services.

Before HOWARD and STUMBO,
Judges; HENRY,[1] Senior Judge.

*OPINION*

HOWARD, Judge.

R.V. and A.V. appeal the judgment of
the Calloway Circuit Court that involun-
tarily terminated their parental rights to
A.J.V. The appellants contend that their
due process rights were violated and that
the findings of fact are not supported by

1.  Senior Judge Michael L. Henry sitting as
Special Judge by assignment of the Chief Jus-
tice pursuant to Section 110(5)(b) of the Ken-
tucky Constitution and KRS 21.580.

clear and convincing evidence. We agree as to the due process issue and reverse.

R.V. is the mother of A.J.V. A.V. is the putative father of A.J.V. by virtue of his being named by R.V. as the biological father and having a positive paternity test. R.V. and A.V. are not married but lived together at the time of the district and circuit court proceedings. R.V. did not graduate from high school and she has a hearing impairment and either borderline cognitive functioning or a learning disability. A.V. has limited English skills and speaks Spanish as his primary language.

On October 22, 2003, the Cabinet for Health and Family Services (hereinafter "the cabinet") filed a dependency, neglect, and abuse petition when the child incurred a black eye after A.V. allegedly hit him. The social worker completing the dependency petition alleged that A.J.V. was neglected and abused, that A.J.V. told her that "his daddy caused his black eye," and that there were "ongoing concerns with chronic neglect." The Calloway District Court placed emergency custody of A.J.V. with the cabinet, which then placed the child with the foster parents with whom he has stayed for the duration of these proceedings.

On October 28, 2003, the district court entered an order appointing R.V. and A.V. each an attorney to represent them in the dependency proceedings. The district court also directed the appellants to undergo a drug evaluation and to complete domestic violence classes. A family case plan was developed on October 29, 2003, with the permanency goal of returning A.J.V. to his parents. The adjudication hearing and the disposition hearing were both conducted together on January 9, 2004. R.V. and A.V. were each represented by their court-appointed attorneys at this hearing. The court concluded in the adjudication order that, based on R.V.'s

admission of neglect and A.V.'s admission of neglect and physical abuse, A.J.V. was neglected. In its disposition order, the district court ordered that the "[p]arents must cooperate w/ CFC & complete all programs & counseling that CFC requires of them."

During an April 28, 2004, review of the dependency proceeding, the district court allowed R.V. visitation and A.V. supervised visitation. At this time, the district court also relieved the attorneys appointed to represent R.V. and A.V. from their duties, even though crucial decisions remained in the dependency action. On May 13, 2004, another family case plan was developed which retained the permanency goal of returning A.J.V. to the appellants and noted that R.V. and A.V. "are slowly progressing on their goals." However, the cabinet changed its goal from one of returning A.J.V. to the appellants to one of adoption in a new case plan developed on August 11, 2003. On August 18, 2004, the district court conducted a permanency hearing. At that permanency hearing, a guardian *ad litem* represented A.J.V., but neither appellant was represented by counsel. At this hearing, the district court approved the cabinet's goal change to adoption and recommended that the cabinet "pursue permanency with foster parents." The district court also found in the August 18 order that A.J.V. "has been in foster care for 15 of the last 22 months," even though the dependency action was only commenced the preceding October. The cabinet concedes that this finding was in error.

On September 10, 2004, the cabinet filed a petition for involuntary termination of parental rights in the Calloway Circuit Court. By order entered on October 27, 2004, the circuit court appointed separate attorneys for R.V. and A.V. They were each represented by counsel throughout

the circuit court proceedings and have been ably represented throughout all proceedings before this court. The circuit court conducted a bench trial, spread over numerous sessions. The cabinet contended at trial that the appellants' parental rights should be terminated, even though by the time of trial A.V. and R.V. had complied with all of their expectations, or "tasks," in the family case plan. In its order terminating the appellants' parental rights, the circuit court stated the following:

> The parents seem to sincerely want reunification; however the Court is convinced that they will never fully appreciate the steps needed to achieve that goal, nor will they work consistently to do so. They are simply incapable of doing so.
>
> ...
>
> It is also somewhat troublesome, not to mention a likely violation of due process, when the parents are not appointed counsel, or their court appointed counsel is relieved as counsel of record with no alternative counsel in place. This Court understands the frustration that a court can have when individuals do not seem to be able to understand the message that is being sent. However, when their capacity for understanding is somewhat limited, mixed signals are akin to a misleading situation which in some instances might border on fraud....

While the Court expressed its concerns with the due process issue regarding lack of counsel during the goal change hearing, the testimony that was presented in this trial indicated that the social workers suggested to the parents that they request appointed counsel again. The problem with this is that it is not the responsibility of the social workers to do so....

Regardless, the Court does not believe that the failure of the District Court to appoint counsel is fatal to the Commonwealth's case, but it is a factor which the Court must consider in determining whether reasonable efforts really were made to reunite the family. In this instance, the Court believes that despite the procedural shortcomings, the Cabinet did act in good faith and essentially did all it could do. Also the Cabinet is not the Court, and has no control over the actions of the District Court.

R.V. and A.V. maintain on appeal that the final judgment of termination must be reversed because their lack of counsel at the goal change hearing and other critical stages of the dependency action detrimentally affected the termination proceeding. We agree and hold that indigent parents are entitled to representation during the entire dependency proceedings.

We begin with the proposition that parental rights are "essential" and "basic" civil rights, "far more precious ... than property rights." *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) (citations and internal quotation marks omitted).

In *Santosky v. Kramer,* 455 U.S. 745, 753–754, 102 S.Ct. 1388, 1394–1395, 71 L.Ed.2d 599 (1982), the United States Supreme Court stated,

> The fundamental liberty interest of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do

those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

The United States Supreme Court has also held, however, that no absolute due process right to counsel exists in termination of parental rights actions, but that, from a constitutional standpoint, appointment of counsel may be determined on a case-by-case basis. *Lassiter v. Department of Social Services of Durham County, N.C.,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *see also M.L.B. v. S.L.J.,* 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996).

Our state's legislature alleviated the need for a court to make case-by-case determinations, however, by providing in KRS 625.080(3) for routine appointment of counsel to represent indigent parents in termination cases. Likewise, in dependency cases, KRS 620.100(1) states,

If the court determines, as a result of a temporary removal hearing, that further proceedings are required, the court shall advise the child and his parent or other person exercising custodial control or supervision of their right to appointment of separate counsel....

(b) The court shall appoint separate counsel for the parent who exercises custodial control or supervision if the parent is unable to afford counsel pursuant to KRS Chapter 31.

Thus, the custodial parent or parents[2] were absolutely entitled to counsel in both the district court and the circuit court, pursuant to KRS 620.100 and 625.080. The circuit court provided both R.V. and A.V. with counsel at all stages of the proceedings before that court. However, in the dependency proceedings, the district court appointed counsel for both R.V. and A.V., but then relieved those attorneys of their duties of representation after the initial disposition order was entered but when critical stages of the dependency action remained.

Kentucky's statutory scheme to protect children and to adjudicate parental rights provides a continuum of proceedings, even though a dependency action is not required prior to the filing of a termination petition. *Commonwealth, Cabinet for Health and Family Services v. C.V.,* 192 S.W.3d 703 (Ky.App.2006). Clearly, the proceedings in a dependency action greatly affect any subsequent termination proceeding. Indeed, in the case at bar, the cabinet changed its goal from returning A.J.V. to his parents to permanent placement with his foster family. The district court approved that goal change. Although, in theory, the goal could change again, back to reunification, it is clear that a district court's approving adoption as a permanency goal significantly increases the risk that parental ties will be severed. Parents are entitled to a meaningful opportunity to be heard, including the right to consult with counsel, at goal change and permanency hearings.[3]

■ We therefore hold, pursuant to both the due process clause of the Four-

2. It is unclear in this case whether the district court considered both R.V. and A.V. as custodial parents, or just R.V. They lived together with the child. However, it appears that A.V. was listed as a *putative* father, apparently because no paternity judgment had ever been entered. While the constitutional requirements of due process would apply to both, the statutory requirement of KRS 620.100 would apply only to the custodial parent(s).

3. The appellants also appear to argue that they were entitled to representation at case planning conferences, between them and the cabinet. We do not go so far, and limit this ruling only to in-court hearings.

teenth Amendment to the United States Constitution and KRS 625.080(3) and 620.100(1), that the parental rights of a child may not be terminated unless that parent has been represented by counsel at every critical stage of the proceedings. This includes all critical stages of an underlying dependency proceeding in district court, unless it can be shown that such proceeding had no effect on the subsequent circuit court termination case.

The circuit court recognized the due process problem created by the district court's action in relieving counsel of their obligations before all critical stages of the dependency proceeding were completed, calling this "troublesome" and "a likely violation of due process." However, the circuit court found that this problem was not "fatal to the Commonwealth's case, but it is a factor which the Court must consider in determining whether reasonable efforts really were made to reunite the family." The court noted that it "believes that despite the procedural shortcomings, the Cabinet did act in good faith and essentially did all it could do."

We certainly do not disagree that the cabinet acted in good faith. However, it is not the cabinet's good faith that is at issue. It is the failure of the district court to provide to the parents the protections to which they were entitled under the Due Process Clause and KRS 625.100. Furthermore, we cannot say that this failure made no difference in the circuit court termination proceeding. At the very hearing in district court at which R.V. and A.V. were unrepresented, the permanency hearing of August 18, 2004, the court made an erroneous finding of fact that the child, A.J.V., had been in foster care for 15 of the preceding 22 months, a finding that was directly significant to the later termination of their parental rights pursuant to KRS 625.090(2)(j).[4]

We are not ruling that this child should be returned to his parents' custody, or even that their parental rights may not ultimately be terminated. We only hold that this termination proceeding was incurably tainted by the failure of the district court to provide counsel for the parents at all critical stages of the underlying dependency proceeding.

Because we are reversing and remanding for the failure of the district court to provide counsel, as set out above, it is unnecessary for us to consider the appellants' other arguments.

The circuit court judgment terminating the parental rights of R.V. and A.V. is reversed and this action is remanded for proceedings consistent with this opinion.

ALL CONCUR.

---

4. That the child have been in foster care for 15 of the most recent 22 months is one of ten factors set out in KRS 625.090(2), one or more of which must be proved to terminate a parent's parental rights, along with a finding of neglect or abuse and a finding that termination is in the child's best interests. The circuit court made all of the required findings, including finding at least three of the factors set out in KRS 625.090(2). By the time this case got to the termination hearing in circuit court, the statement that the child had been in foster care for 15 of 22 months was true ("almost three years," according to the circuit court). However, we cannot say that the district court's erroneous finding, and its corresponding approval of the cabinet's goal change to adoption, did not contribute to this fact, particularly in light of the fact that it was also true that the parents in this case had, by the time of the termination hearing, completed all of their assigned "tasks" to achieve reunification.