v.

CABINET FOR HEALTH AND FAMILY SERVICES, Commonwealth of Kentucky, in the Interest of C.K.A., an Infant, Appellees,

C.F.A., Appellant,

v.

Cabinet for Health and Family Services, Commonwealth of Kentucky, in the Interest of C.K.A., an Infant, Appellees.

Nos. 2012–CA–000590–ME, 2012–CA–000591–ME.

Court of Appeals of Kentucky.

Dec. 21, 2012.

---

Johnny O. Bolton, Lancaster, KY, for Appellant, C.J.M.

Robert L. Gullette, III, Nicholasville, KY, for Appellant, C.F.A.

Sheila F. Redmond, Cabinet for Health and Family Services, Lexington, KY, for Appellee.

Before CLAYTON, COMBS, and NICKELL, Judges.

## OPINION

CLAYTON, Judge:

C.J.M. ("the mother") and C.F.A. ("the father") appeal in separate cases from the Garrard Circuit Court's order and judgment terminating their parental rights. After a careful review, we affirm.

On June 1, 2011, the Cabinet for Health and Family Services of the Commonwealth of Kentucky (hereinafter "the Cabinet")

filed a petition for involuntary termination of the parental rights of the mother and the father, to C.K.A. ("the child"), who was born on May 10, 2010. Although the parents lived together, they were not married.

The case commenced shortly after the birth of the child, when the Cabinet received a report alleging that the child tested positive for marijuana at birth. Based on this report, an investigative worker with the Cabinet conducted a home visit at the parents' residence on May 19, 2010. At the residence, the worker and a colleague immediately saw as they walked up to the house a large amount of beer cans and beer cases—approximately five (5) feet tall and four (4) feet wide at the base—under the porch. While there, the Cabinet workers also determined that the child did not have a crib or bassinet and was sleeping on a couch.

The mother, who was at home, admitted that she used marijuana during and prior to the pregnancy. She also informed the Cabinet workers that she had two other children from a different relationship who were placed with their father in Ohio. The mother disclosed that she had not seen them in quite some time.

The father, who was also present, however, objected strenuously to taking a drug test, admitted that he smoked marijuana regularly, and stated that he was not going to stop. During his incantations, the Cabinet workers became concerned about their safety. Still, they advised the parents that they would be filing a petition in court but would not seek the child's removal if the parents agreed to a prevention plan. The mother agreed to follow a prevention plan, but the father would not. The mother's prevention plan required that she undergo a drug test that day, not leave the child alone with the father, and go to the Cabinet's office later in the day.

On that same day, since the Cabinet workers believed that the child's safety was jeopardized both because of the father's erratic behavior and also because they believed that he might be driving with the child while under the influence, they arranged for law enforcement to be at their office when the couple arrived. Upon the mother's arrival, she was arrested on an outstanding warrant for an unrelated charge. An attempt was made to locate a relative to care for the child but no one could be found. Thus, the child, pursuant to an emergency custody order, entered foster care.

A temporary removal hearing was held on May 21, 2010, in the family court division of Garrard Circuit Court. At the hearing, the court ordered that the child remain in the custody of the Cabinet. The mother was present at the hearing, but the father was not. The mother stipulated to the allegations in the petition.

A short time later, the Cabinet determined that B.A., the father's aunt ("aunt"), was an appropriate relative to care for the child, and she was given temporary custody of the child. The aunt cared for the child for approximately a month but, ultimately, was unable to care for the child because of difficulties with the parents who lived on the same property as the aunt. The child was placed with a foster family with whom she still resided at the time of the trial.

An adjudication hearing was held on August 5, 2010. At this hearing, the family court found that the father, based on previous admissions, neglected the child. The mother had stipulated to neglect. The family court entered a disposition order, which adopted the Cabinet's case plan.

As a result of the proceedings in family court, both parents and the child were appointed counsel. The parents, however, fired their appointed counsel during the

dependency proceedings. (Counsel was reappointed for the termination action.) Next, both parents, pro se, filed civil rights actions in both Garrard Family Court and United States District Court against various Cabinet employees. Eventually, all the civil actions were dismissed.

During the dependency action, the Cabinet prepared several case plans for the family. At the first case planning meeting in May 2010, the mother was the only parent who attended. Neither parent attended the next three case planning meetings despite being provided notice either verbally or by certified mail. The case plans were basically the same and required the following actions by the parents: attend parenting classes, submit to random drug screens, do not use illegal drugs or abuse alcohol, complete mental health and substance abuse assessments, attend court and comply with court orders, attend visitation with the child, and cooperate with scheduled home visits. Further, the mother and the father were each ordered to pay $60 per month in child support.

Next, during a routine home visit in September 2010, a Cabinet worker stated that she and another worker were confronted and threatened by the father. He told them not to come back until the parents' aforementioned federal litigation was resolved. Further, he informed them that neither he nor the mother was going to work the case plan until the federal case was finished. The mother, who was present, did not dispute his statements. The father, in either December 2010 or January 2011, authored and submitted his own case plan. While the case plan was reviewed by the Cabinet, it did not respond nor accept it.

In fact, over the course of the case, the father became increasingly hostile. On that same day in September 2010, the family court observed that the father had requested to waive further appearances in court and upon his request, the court, pursuant to Kentucky Revised Statutes (KRS) 610.127, waived reasonable efforts to reunite him with the child.

In October 2010, without notifying the Cabinet, the mother went to a domestic violence shelter. When the Cabinet spoke with her, she claimed that she was the victim of domestic violence. While at the shelter, the Cabinet made arrangements for the child to visit her mother at the shelter, but the Cabinet claims that the mother left the shelter before the visit could take place. On the other hand, the mother maintains that the visitation was canceled before she left the shelter. She stayed at the shelter for about a month.

Then, in early February 2011, the father was arrested and charged with terroristic threatening against a Cabinet worker and her supervisor. As noted above, his behavior toward Cabinet workers continued to become increasingly antagonistic. He pled guilty to these charges and was ordered to have no contact with the worker or her supervisor. The no contact orders were still in effect at the time of the termination trial. Moreover, the record indicates that both parents have other numerous criminal convictions in Kentucky.

On April 1, 2011, as required by KRS 610.125, the family court held the annual permanency planning hearing. After consideration of the parents' progress on their case plans, the family court changed the goal for the child from reunification to adoption. Hence, on June 1, 2011, the Cabinet filed a petition for involuntary termination of the parental rights. The trial regarding the termination of parental rights was held on February 7, 2012.

At the trial, the Cabinet testified to the above-noted history of the cases. Further, the Cabinet pointed out that the child had

been in foster care for approximately two years with the same foster family and that the foster family wanted to adopt her if allowed the opportunity. The child was doing well and was very bonded with the foster family.

The mother also testified. Countering the assertions of the Cabinet, she maintained that the Cabinet failed to use reasonable efforts to reunite the child with her. The mother contended that the Cabinet workers became so consumed and distracted by their dealings with the father that the workers transferred their feelings about the father to her.

In particular, she noted that the reason she was not at the last two case planning conferences was because she was not made aware of them. During her testimony, however, she acknowledged that she and the father changed post office box addresses without notifying the Cabinet. Further, at the trial, the mother denied any domestic violence had taken place in October 2010.

Specifically, with regard to the case planning goals, the mother testified that she understood it was her responsibility to complete these tasks. And she acknowledged that initially she made an effort, but because of difficulties with transportation, finances, and the Cabinet not returning her phone calls, she claimed she was unable to continue with the tasks. She did concede that other people, including church members, the aunt, and the father, had all agreed to provide transportation when she needed it. And, even though the mother was without employment, she was receiving unemployment checks from a previous position in Ohio. Finally, although she claimed that the Cabinet did not return her phone calls, during her testimony she repeatedly referred to numerous conversations with Cabinet workers, including the offers of various services related to her case plan. Significantly, the mother stated during cross examination that the last time she worked on her case plan was at the end of 2010 or in early 2011.

Ultimately, the Cabinet stated at the trial that the mother did not complete any of the tasks or provide proof of completion of the tasks. The Cabinet acknowledged that initially, she was cooperative with them, but as early as fall 2010, she did little or nothing to work on her case plan. The Cabinet noted that the last time that the mother visited with the child was on September 14, 2010. Further, evidence was provided that the mother's child support arrearage was $199.

The father also testified at trial. He contended that termination of his parental rights was not warranted because the Cabinet did not use reasonable efforts to reunite him with the child. But the Cabinet countered that never during the pendency of this action did the father cooperate with the Cabinet, participate in a case plan, or visit with the child. In fact, he had not seen the child since June 2010, and his child support arrearage was $460.

On February 27, 2012, the Garrard Circuit Court entered Findings of Fact, Conclusions of Law, and an Order Terminating Parental Rights and Judgment. In the family court's orders, it detailed that both parents had abandoned the child for a period of at least ninety (90) days; had not made adequate efforts in the child's best interests so that she could be returned to their custody; had failed to protect and preserve the child's right to a safe, nurturing home; and finally, that it was in the child's best interest for the mother's and father's parental rights to be terminated. And, pursuant to KRS 600.020(1), the child was an abused and neglected child.

Then, the family court determined that under KRS 625.090, it had been estab-

lished by clear and convincing evidence that both the mother and father had abandoned the child for a period of not less than ninety (90) days; that the parents, for a period of not less than six (6) months, had continuously failed or refused to provide or have been substantially incapable of providing essential parental care and protection for the child, and that there was no reasonable expectation of improvement in parental care and protection, considering the age of the child; that the parents, for reasons other than poverty alone, had continually failed or refused to provide or were incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being; that there is no reasonable expectation of significant improvement in the parents' conduct in the immediately foreseeable future, considering the age of the child; and that the Cabinet had provided or offered to provide all reasonable services to the parents in an effort to keep the family together. Both parents appealed from these orders and are separately represented.

The mother and the father both argue that the findings of the family court are clearly erroneous and that the Cabinet failed to make reasonable efforts to reunite the child with them. Part of their argument is the contention that because the child was removed from their care at such a young age, they were not given ample opportunity to establish their ability to parent the child. Furthermore, they argue that they were without effective assistance of counsel during critical phases of the juvenile case. The Cabinet counters that substantial evidence of a clear and convincing nature supported the termination of parental rights and that because the parents waived representation during the dependency proceedings, they were not denied effective assistance of counsel.

A court has broad discretion to determine whether a child has been either abused or neglected and whether the best interests of the child warrant a termination of parental rights. *R.C.R. v. Commonwealth Cabinet for Human Res.*, 988 S.W.2d 36, 38 (Ky.App.1998). The standard of review that an appellate court uses in a termination of parental rights case is the clearly erroneous standard. Thus, a trial court's findings of fact will not be set aside unless unsupported by substantial evidence. *Id.; see also* Kentucky Rules of Civil Procedure (CR) 52.01.

The statutory direction found in KRS 625.090 provides that a circuit court may involuntarily terminate parental rights if it finds, by clear and convincing evidence, that the child is an abused or neglected child as defined in KRS 600.020(1) and that termination serves the best interest of the child. KRS 625.090(1)(a)–(b). Lastly, the circuit court must ascertain under KRS 625.090(2) that clear and convincing evidence has been provided to show the existence of one or more of ten factors. In the case at hand, the Cabinet propounded three (3) of the ten (10) factors in the statute:

(2)(a) That the parent has abandoned the child for a period of not less than ninety (90) days;

. . . .

(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

. . . .

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapa-

ble of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]

KRS 625.090(2)(a), (2)(e), and (2)(g). Further, the mother and the father cite KRS 625.090(3)(c) for the requirement that the Cabinet must, when the child has been placed with them, make reasonable efforts, as defined in KRS 620.020, to reunite the child with the parents. They contend that the Cabinet did not do so. We now address the issues in the case.

█ Our analysis begins with a discussion of the parents' contention that they were not given an ample amount of time to parent the child since she was removed from their home shortly after her birth. Consequently, they claim that insufficient evidence existed to support the family court's findings and the findings are clearly erroneous.

The record indicates that the Cabinet's investigating worker discovered at the initial visit to the parents' home a huge pile of beer cans and boxes. Moreover, the reason for the visit was that the infant was born with marijuana in her system. Both parents admitted to smoking marijuana before and during the pregnancy. In fact, the father stated emphatically that he intended to continue smoking marijuana. The Cabinet workers stated that during this initial visit they actually felt threatened by his demeanor. And, the workers saw that the infant had no bassinet or crib and was sleeping on a couch, which is dangerous for an infant.

First, we observe that KRS 600.020(1)(a)(2) permits a finding by a court of neglect or abuse where the risk of abuse exists. Similarly, with regard to the

length of time that the child was with the parents, in *W.A. v. Cabinet for Health and Family Services, Commonwealth,* 275 S.W.3d 214 (Ky.App.2008), our Court upheld a court's judgment terminating parental rights of a child who had only been in the physical custody of the biological parents for a couple nights was not erroneous since the child tested positive for cocaine. As in the case here, the child tested positive for marijuana at birth and both parents admitted that they had used marijuana before and during the pregnancy. Here, we agree with the trial court that sufficient evidence was provided to remove the child from the home in order to ensure her safety.

Next, we review the family court's decision that the Cabinet proved by clear and convincing evidence that the child was abused or neglected, that termination was in her best interests, and the following three (3) factors: that the parents had abandoned the child for a period of not less than ninety (90) days; that the parents, for a period of not less than six (6) months, have failed or refused to provide essential parental care and protection for the child and that there is no reasonable expectation of improvement considering the age of the child; and, lastly, that the parents, for reasons other than poverty alone, have failed to provide or are incapable of providing essential food, clothing, shelter, medical care, or education necessary for the child's well-being and that there is no reasonable expectation of significant improvement in the parents' conduct in the immediately foreseeable future, considering the age of the child.

█ Apparently, the parents concede that the child was abused or neglected since they do not contest it. With regard to whether they abandoned the child, neither parent has seen the child for more than one (1) year: the mother last saw the

child in September 2010 and the father last saw the child in June 2010. Whether they could provide appropriate parental care is dubious since neither parent worked on his/her case plans. The mother conceded that the last time she worked on it was in late 2010 and the father refused to work on the case plan. Both have child support arrearages. Given the broad discretion granted to the trial court's decision regarding the efficacy of termination of parental rights, in this case, there is substantial evidence to support the court's decision and it is not clearly erroneous.

■ Lastly, we considered the Cabinet's obligation to make reasonable efforts toward reunification of the family as required in KRS 625.090(3). To determine the best interests of the child when deciding whether to terminate parental rights, the family court must ascertain whether reasonable efforts were made by the Cabinet to reunite the parents with the child. In the case at bar, the Cabinet argues that in order to ensure best interests of the child, the termination of parental rights was correct because, clearly, they made reasonable efforts to facilitate the reunion of the family, which were not followed through by the parents.

Reasonable efforts are defined by KRS 620.020(11) as "the exercise of ordinary diligence and care by the department to utilize all preventive and reunification services available . . . necessary to enable the child to safely live at home[.]" The Cabinet offered the mother many services associated with her case plan. And she did participate with the plan in the beginning. But, eventually, she ceased attending parenting classes, participating in the random drug tests, abstaining from any illegal drug use or alcohol, completing mental health and substance abuse assessments, attending court, making the planned visits with her child, and cooperating with home visits. The family court was provided substantial evidence that the Cabinet offered services to the mother and that she did not avail herself of them. There was no error in the family court's judgment regarding reasonable efforts for the mother.

■ Next, we consider the reasonable efforts offered to the father. As heretofore explained, pursuant to KRS 610.127(7), reasonable efforts are not required as defined in KRS 620.020 when the court determines with respect to a parent that the parent has created circumstances that make continuation of reasonable efforts to reunify the family inconsistent with the best interests of the child and with the permanency plan for the child. On September 10, 2010, the father requested of the court that reasonable efforts to reunite him with the child be stopped. The court granted his request. Once that occurred, the father never attempted to work with the Cabinet again. The history of his action in this case is that he admitted he smoked marijuana and would continue to do so, he threatened Cabinet staff which eventually resulted in a terroristic threatening conviction, and he refused to participate in any case plan. The Cabinet does not have the power to compel someone to accept reasonable efforts. Sadly, not only did the father ignore efforts to work toward reunification, but he also chose not to see the child. He has not seen his child since June 2010 and failed to pay most of the child support. Consequently, substantial evidence existed to support the family court's decision that reasonable efforts were made by the Cabinet but the father refused them.

The family court found the Cabinet made reasonable efforts to reunite the parents with the child. Considering the nature of the neglect, the lack of insight on the parents' part regarding its seriousness, and the parents' complete lack of progress

on the case plan, the family court appropriately decided through its findings that termination of parental rights is in the child's best interest. There is no error in the family court's finding on this factor.

■ The final issue proffered by the parents is that they were without effective assistance of counsel during a critical portion of the dependency action. Importantly, the reasons that the parents were without representation during a portion of the dependency proceedings was because they dismissed their respective counsel.

Some question exists as to whether the issue was preserved. The parents argue that it was preserved because they mentioned it during their closing arguments. And, the parents also maintain that even if not preserved appropriately, the legal precept that certain non-preserved issues must be considered in order to prevent manifest injustice requires its consideration.

Representation for indigent parents in termination cases is outlined in KRS 625.080(3), wherein it is provided that counsel shall be appointed for indigent parents in termination and dependency cases. And, both parents cite *R.V. v. Commonwealth, Dept. for Health & Family Services,* 242 S.W.3d 669 (Ky.App.2007), for the proposition that they were entitled to representation during the entirety of the dependency proceedings. In the *R.V.* case, this Court held as follows:

> [T]he parental rights of a child may not be terminated unless that parent has been represented by counsel at every critical stage of the proceedings. This includes all critical stages of an underlying dependency proceeding in district court, unless it can be shown that such proceeding had no effect on the subsequent circuit court termination case.

*Id.* at 673.

Since the parents were represented by counsel during the entire termination pro-

ceeding, the only dispute regarding representation relates to the period of time in the dependency action. The record shows that each parent was initially provided counsel at the temporary removal hearing. But both parents allege that on July 9, 2010, they filed motions to dismiss counsel and, further, that they *waived* any future appointment of counsel. Since this motion was made during the dependency proceeding, it is not a part of this record. In addition, the parents provided no evidentiary proof of the date or the wording of the motion. Nonetheless, unmistakably at some point in the dependency proceedings, the parties dismissed their respective counsel and were not represented. Subsequently, on October 28, 2011, the family court reappointed counsel for the parents.

Kentucky jurisprudence mandates that an indigent parent has the right to the appointment of counsel at all critical stages of the underlying dependency proceedings. *See R.V.*; KRS 625.080(3). This right to counsel, however, is limited if it can be shown that the dependency proceeding, wherein the parent was not represented, had no effect on the subsequent circuit court case. *R.V.,* 242 S.W.3d at 673.

Neither parent has proven that their decision to be unrepresented occurred at a critical stage of the underlying dependency proceeding. Moreover, while counsel is to be appointed in dependency actions, no statutory or caselaw provisions indicates that counsel must be foisted on parties who decline representation. Furthermore, the actual language of the statute itself states that regarding appointment of counsel, upon determining that a parent is indigent the circuit court shall inform the parent of the right to counsel, and "*upon request,* if it appears reasonably necessary in the interest of justice, the Circuit Court

shall appoint an attorney to represent the parent[.]" KRS 625.080(3) (emphasis added).

Our review of the record herein emphatically supports the proposition that manifest injustice did not happen in this case. The parents chose to dismiss counsel during the dependency action. When the case became a termination action, they were provided with counsel and accepted representation. No error occurred.

Therefore, the Garrard Circuit Court's order terminating the parental rights of the mother and the father is affirmed.

ALL CONCUR.