RENDERED: JANUARY 2, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0414-ME

V.A.S.[1]                                                                          APPELLANT


APPEAL FROM GRAYSON CIRCUIT COURT
v.          HONORABLE KENNETH H. GOFF, II, JUDGE
ACTION NO. 22-AD-00035


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; A.N.S., A
MINOR CHILD; AND J.W.S.                                          APPELLEES

AND

NO. 2025-CA-0419-ME

V.A.S.                                                                              APPELLANT


APPEAL FROM GRAYSON CIRCUIT COURT
v.          HONORABLE KENNETH H. GOFF, II, JUDGE
ACTION NO. 22-AD-00036

---

[1] Pursuant to Kentucky Court of Appeals Administrative Order No. 2006-10, to protect the privacy of minors, we refer to parties in termination of parental rights cases by initials.

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; J.W.S.; AND
K.M.S., A MINOR CHILD                      APPELLEES

AND

NO. 2025-CA-0420-ME

V.A.S.                                           APPELLANT

APPEAL FROM GRAYSON CIRCUIT COURT
v.      HONORABLE KENNETH H. GOFF, II, JUDGE
ACTION NO. 22-AD-00037

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; A.R.P., A
MINOR CHILD; C.C.P., SR.; AND
J.W.S.                               APPELLEES

AND

NO. 2025-CA-0421-ME

V.A.S.                                           APPELLANT

APPEAL FROM GRAYSON CIRCUIT COURT
v.      HONORABLE KENNETH H. GOFF, II, JUDGE
ACTION NO. 22-AD-00038

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND

FAMILY SERVICES; C.C.P., SR.;
C.T.P., A MINOR CHILD; AND J.W.S.                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, MCNEILL, AND MOYNAHAN, JUDGES.

MCNEILL, JUDGE:  V.A.S. (hereinafter "Mother") appeals from the judgments

terminating her parental rights to her four minor children entered by the Grayson

Circuit Court on February 12, 2025.  After careful review of the briefs, record, and

law, we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Mother and C.C.P., Sr., (hereinafter "Father") are the parents of the

four children at issue.[2]  On November 16, 2022, the Cabinet for Health and Family

Services (hereinafter "the Cabinet") filed the underlying termination of parental

rights ("TPR") petitions.  The circuit court held a final hearing on February 6,

2025, when the children, A.N.S., K.M.S., C.T.P., and A.R.P. were 16, 12, 10, and

---

[2]  Father is only biologically related to the two youngest children, C.T.P. and A.R.P.; however, he has been in a relationship with Mother since approximately 2014 and was an active caregiver to all the children prior to these proceedings.  For ease of reference, we will refer to him in this Opinion as the father without any distinction.

9 years of age, respectively.[3] The court heard testimony from Dr. Stout, who assessed Mother and Father's parental capacity, a social worker, Father, and Mother.

After the close of proof, on February 12, 2025, the court entered findings of fact, which we will summarize. In February 2020, the Cabinet filed dependency, neglect, and abuse ("DNA") petitions alleging that the children's sibling, who is not a subject of this action, was underweight and had scratches and a rash; that the home was infested with bed bugs and did not otherwise meet minimum standards of cleanliness; that there was domestic violence between Mother and Father; and that Father had attempted to hang himself in the presence of the children. The children were removed from parental care and placed in the Cabinet's custody on February 6, 2020. The DNA petitions were later amended to add that A.N.S. had disclosed sexual abuse by Father.

On February 25, 2021, the parents entered the following stipulation:

> The children were at risk of harm for neglect while in the care of Mother and Father. A.N.S. alleged inappropriate contact between herself and Father, which put A.N.S. at risk for emotional injury. The environment in which the children lived included the use of THC and other

---

[3] We note that the significant delay between the filing of the petitions and the final hearing is at least in part due to Mother's two motions for a continuance, the first to permit her time to complete items on her case plan and the second to retain new counsel, which she did not ultimately do.

environmental factors that concerned the school in which the children attended.[4]

Grayson Circuit Court's Findings of Fact and Conclusions of Law, pg. 7. Based on the stipulation, the children were found to be abused or neglected.

The Cabinet developed case plans and provided services to aid the parents in reunifying with the children. To that end, the Cabinet made appropriate referrals for substance abuse counseling, parenting classes, individual therapy, and domestic violence counseling (Mother) and batterer's intervention (Father), which, excepting batterer's intervention, the parents completed. The Cabinet also provided random drug screens and supervised visitation sessions.

The parents underwent a parental capacity evaluation by Dr. Stout. Dr. Stout determined that neither parent met minimum parental capacity standards and that both parents were at a high risk for future child abuse. In the evaluation, Dr. Stout made treatment recommendations that were added to the parents' case plans, but neither parent complied with their amended plan. Specifically, Mother failed to engage in the Kentucky Targeted Assessment Program and failed to engage in mental health treatment with a focus on her difficulty in verbal and nonverbal reasoning; her dishonesty; her deficits in parental judgment, insight, empathy, and knowledge of the children's diagnoses; and her maladaptive

---

[4] The quotation has been edited to remove identifying information and for conformity within this Opinion.

personality traits of dependency. Father likewise failed to undergo a psychosexual evaluation to assess his risk of sexual abuse towards the children and failed to engage in mental health therapy with a focus on addressing the deficits in his parental judgment, insight, and empathy; his risk for suicide and homicide; his substance abuse; and his maladaptive antisocial personality traits. The parents also had significant arrearages in their court ordered child support payments, Mother was $2,719 in arrears.

The social worker testified that she was unaware of any additional services that would make it appropriate to reunify the family within a reasonable time, citing the five years the children had already been in care. She also asserted that the children's needs have been met in foster care, they are attached to their foster parents, who wish to adopt them, and that they are expected to continue to make improvements if TPR was granted.

Based on the above, the court determined that the Cabinet had met the statutory requirements for TPR and granted TPR. This appeal from Mother timely followed.

**STANDARD OF REVIEW**

On appeal, the circuit court's findings of fact are subject to the clearly erroneous standard of review. Kentucky Rules of Civil Procedure ("CR") 52.01. Accordingly, we give great deference to the circuit court's findings of fact and will

only set them aside if the record is devoid of substantial evidence to support them.

*D.G.R. v. Commonwealth, Cabinet for Health and Family Servs.*, 364 S.W.3d 106, 113 (Ky. 2012). Application of the law to the facts, we review *de novo*. *Id*.

## ANALYSIS

TPR actions are governed by Kentucky Revised Statutes ("KRS") 625.090.[5] TPR may be granted only if the circuit court finds that a three-pronged test has been met by clear and convincing evidence. *Id*. First, the children must be deemed abused or neglected as defined by KRS 600.020(1). KRS 625.090(1)(a). Second, the circuit court must find the existence of at least one statutory ground for termination listed in KRS 625.090(2). And third, termination must be found to be in the best interest of the children after consideration of the factors listed in KRS 625.090(3).

Mother does not challenge the circuit court's conclusion that the Cabinet satisfied the first two prongs[6] for TPR. On the third prong, the best

---

[5] We cite to the current version of the statute, 2025 Ky. Acts ch. 26, § 6, eff. 6-27-25, because the only differences in the portions of the statute relevant to this appeal from the applicable version, 2022 Ky. Acts ch. 223, § 3, eff. 4-20-22, are not substantive.

[6] Mother, however, did assert that the circuit court erred by applying the best interest factors of KRS 625.090(3) to its analysis under the second prong of whether there was no reasonable expectation of significant improvement in her ability to provide parental care and protection as well as the necessities of life, as required to support a finding under KRS 625.090(2)(e) and (g). Because only one statutory ground is necessary under the second prong and it is indisputable that the court's alternative finding that the children have been in foster care for the requisite period satisfies this requirement, KRS 625.090(2)(j), we need not resolve this issue. We would be remiss, however, not to note that KRS 625.090(3) specifically states that the court should

-7-

interest of the children, Mother contends that the court's determination erroneously relied on findings not supported by the evidence and disregarded relevant evidence. Specifically, Mother states that the court's findings in relation to the Cabinet's efforts towards reunification, her compliance with her case plan, and her alleged non-support of her children are not supported by clear and convincing evidence. We will address each claim in turn.

KRS 625.090(3)(c)1. requires the court to consider whether the Cabinet "has, prior to the filing of the [TPR petition, m]ade reasonable efforts . . . to reunite the child[ren] with the parents unless" waived by a written order in conformance with KRS 610.127. "'Reasonable efforts' means the exercise of ordinary diligence and care by the [Cabinet] to utilize all preventive and reunification services available to the community . . . which are necessary to enable the child[ren] to safely live at home[.]" KRS 620.020(13).

Mother disputes the court's finding that reasonable efforts were made when the Cabinet successfully requested to change the permanency goal to adoption and to waive further reunification efforts only three months after amending her erstwhile completed case plan and without even making referrals for her to accomplish the new tasks. She asserts that, unlike in cases where this Court

consider the list of factors when determining both "the best interest of the child *and the existence of a ground for termination*[.]" (emphasis added).

has affirmed the finding of reasonable efforts, *C.J.M. v. Cabinet for Health and Family Services*, 389 S.W.3d 155, 162 (Ky. App. 2012), and *T.P. v. Cabinet for Health and Family Services*, 697 S.W.3d 758, 763-64 (Ky. App. 2024), she never stopped cooperating with the Cabinet and, as evidenced by the amended case plan, there were services available to aid in reunifying her with the children. Accordingly, she argues the court's finding is refuted by the evidence.

We disagree with Mother's reasoning. Accepting that Mother had completed all of the tasks on her case plan prior to the parental capacity evaluation in July 2022, we are left with Dr. Stout's conclusion that, even after the Cabinet's efforts and over two years after the children were removed from her care, Mother did not meet minimally adequate parental standards and that, if returned to her care, the children would be at an unacceptable risk for future abuse or neglect.

Further, while Mother complains that the Cabinet did not facilitate her completion of Dr. Stout's treatment recommendations, the relevant period under KRS 625.090(3)(c) is only the three months preceding entry of the order waiving reasonable efforts. Dr. Stout concluded in her evaluation, and detailed in her testimony, that Mother had a poor prognosis for obtaining adequate parental capacity. Dr. Stout based this on Mother's critical deficits in insight, empathy, and judgment that were barriers to her risk management of future harm to the children; her continued dependence on Father and maintenance of that relationship despite

the children's disclosures of excessive discipline, domestic violence in the relationship, and his perpetrating sexual abuse on one of the children; and Mother's inability to recall anything she had learned from prior services. Given this expert opinion, we cannot say that the Cabinet was not acting with ordinary diligence and care when it failed to make referrals in the three months preceding the order waiving reasonable efforts, and the court did not err in so finding.

Next, KRS 625.090(3)(d) states that the court must consider "[t]he efforts and adjustments the parent has made in [her] circumstances, conduct, or conditions to make it in the child[ren]'s best interest to return [them] to [her] home within a reasonable period of time, considering the[ir] age[s.]" Mother cites to *K.D.H. v. Cabinet for Health and Family Services*, 630 S.W.3d 729, 737-38 (Ky. App. 2021), for the proposition that there must be clear and convincing evidence that there is no reasonable expectation of parental improvement and argues the standard was not met given her compliance with the initial case plan and Dr. Stout's identification of additional services that would aid reunification.

Again, we cannot agree. In its findings of fact, the court acknowledged that Mother had completed various items on her case plan but found that she had not completed the tasks arising from the parental capacity evaluation. Mother does not dispute that she did not complete these tasks, and, though she attributes this wholly to the Cabinet's failure to make referrals, she has not

produced any evidence or argument that such referrals were necessary. And, again, Dr. Stout's evaluation determined that Mother had not made sufficient adjustments to meet minimally adequate parental standards and that she had a poor prognosis for improvement. At the time of the hearing, the children had been out of parental care for five years, and they were in a stable foster home with good prospects for adoption. As Mother had not even begun the services identified as necessary to bring her to a minimal standard, the court's finding against Mother is supported by substantial evidence.

Finally, pursuant to KRS 625.090(3)(f), the court is also to consider "[t]he payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so." Mother asserts that the court erroneously equated her present child support arrearage with a failure to pay for the children's support. We disagree. Mother testified that she was in arrears because, in the over two months following her change in employment, she had taken no action to update her information so that her children's support could be deducted from her pay. Accordingly, the court's finding that she failed to pay for her children's maintenance is supported by her affirmative nonsupport and is not erroneous.

**CONCLUSION**

For the above stated reasons, the judgments of the Grayson Circuit Court terminating Mother's parental rights are AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Richard I. Williams, Jr.
Louisville, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Kevin Martz
Covington, Kentucky