RENDERED: FEBRUARY 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0588-ME

S.J.H.                                                                              APPELLANT

v.             APPEAL FROM GRAYSON CIRCUIT COURT
               HONORABLE KENNETH H. GOFF, II, JUDGE
               ACTION NO. 23-AD-00041

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; D.L.E.; AND
K.L.E., A MINOR CHILD                                                               APPELLEES

AND

NO. 2025-CA-0590-ME

S.J.H.                                                                              APPELLANT

v.             APPEAL FROM GRAYSON CIRCUIT COURT
               HONORABLE KENNETH H. GOFF, II, JUDGE
               ACTION NO. 23-AD-00042

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; J.J.C; AND
J.E.C., A MINOR CHILD                                                               APPELLEES

** ** ** ** **

BEFORE:  CETRULO, A. JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  In these consolidated appeals, S.J.H. (Mother) appeals the

March 24, 2025, orders of the Grayson Circuit Court that terminated her parental

rights to her two children, K.L.E., fourteen years of age and J.E.C., twelve years of

age.[1]  After careful review, we affirm.

## BACKGROUND

The Cabinet for Health and Family Services (CHFS) had been

involved with this family for various reasons since the children were infants.  In

December 2021, a dependency, neglect, and abuse (DNA) petition was filed in

Grayson District Court on behalf of K.L.E. that alleged abuse or neglect by her

father and his paramour.  At that time, K.L.E. was placed in Mother's temporary

custody.  However, while K.L.E. was in Mother's custody, reports were made to

CHFS from K.L.E.'s school stating she had missed multiple days and was

displaying behavior indicating she had not been taking her ADHD medication.  In

May 2022, K.L.E. was removed from Mother's custody and placed in the custody

of CHFS.  A DNA petition was contemporaneously filed in Grayson District Court

---

[1] K.L.E.'s biological father, D.L.E., and J.E.C.'s biological father, J.J.C., also had their parental rights terminated in the same proceedings, but did not appeal.

on behalf of J.E.C. and he was also placed into the custody of CHFS. At that time, K.L.E. was eleven years old and J.E.C. was nine years old.

The district court conducted adjudication proceedings on July 28, 2022, and Mother stipulated to abuse or neglect for both children. The dispositional hearing took place in district court in August of 2022. CHFS then filed petitions for termination of parental rights in Grayson Circuit Court on September 12, 2023.[2] For reasons that are unclear from the record before this Court, the final hearing was continued several times, but was eventually held on February 24, 2025. Thereafter, the circuit court entered findings of fact, conclusions of law, and orders terminating Mother's parental rights on March 24, 2025. These appeals followed.

STANDARD OF REVIEW

The applicable standard of appellate review of findings by the family court in a termination of parental rights case is the clearly erroneous standard; thus, the findings of fact will not be set aside unless unsupported by substantial evidence. *M.L.C. v. Cabinet for Health and Family Servs.*, 411 S.W.3d 761, 765 (Ky. App. 2013); *see also* Kentucky Rules of Civil Procedure (CR) 52.01. A family court has broad discretion in determining whether the best interests of the

---

[2] Grayson County does not have a family court.

-3-

child warrant termination of parental rights. *C.J.M. v. Cabinet for Health and Family Servs.*, 389 S.W.3d 155, 160 (Ky. App. 2012) (citation omitted).

Kentucky Revised Statutes (KRS) 625.090 sets forth the requirements which must be met before a court in Kentucky can involuntarily terminate parental rights. First, the circuit court must determine that the child is abused or neglected or that the child was previously determined to be abused or neglected by a court of competent jurisdiction. KRS 625.090(1)(a). Second, a petition seeking the termination of parental rights must have been filed by CHFS pursuant to KRS 620.180 or 625.050. KRS 625.090(1)(b)1. Third, the lower court must find that termination is in the best interests of the child. KRS 625.090(1)(c). Finally, the lower court must find by clear and convincing evidence the existence of one or more of the eleven grounds (a) through (k) listed in KRS 625.090(2).

## ANALYSIS

On appeal, Mother makes numerous arguments related to the findings of the circuit court. First, she contends the circuit court erred when it found that Mother stipulated to abuse or neglect in the underlying DNA proceedings. Mother also argues that, in contravention of KRS 625.090(3)(c), CHFS did not make reasonable efforts to unite the children with Mother, especially considering that Mother was in compliance with her case plan. We disagree.

-4-

Mother's first argument is perplexing. She argues she never stipulated to abuse or neglect in the underlying DNA actions; however, this is refuted by the record before us. Mother points to forms AOC-DNA-18 filed for both children entitled "Stipulation of Facts & Waiver of Formal Adjudication Hearing" in which she claims the signature lines for her and her attorney are blank. For K.L.E., there are two forms. On one form, the signature lines for Mother and her attorney *are* blank because the form is signed only by K.L.E.'s father and his paramour. However, there is another identical form that *is* signed by both Mother and her attorney. The form states Mother stipulated to neglect or abuse because "[t]he child was at risk of harm for neglect in the care of the mother. The mother was unwilling or unable to meet the child's basic needs." An identical form exists for J.E.C., also signed by Mother and her attorney. Both forms were entered in the district court on July 28, 2022. Despite Mother's arguments to the contrary, the record before us indicates Mother did in fact stipulate to abuse or neglect in the underlying DNA proceedings for both children.

However, regardless of any finding of or stipulation to abuse or neglect in the district court, the circuit court made an independent determination that the children were abused or neglected in the termination proceeding pursuant to KRS 625.090(1)(a). We also note that, had Mother disagreed with the findings

of the district court in the DNA proceedings, she was free to appeal following entry of the disposition order on August 18, 2022.[3] She did not appeal.

Next, Mother takes issue with the circuit court's findings pertaining to KRS 625.090(3)(c), which provides

> (3) In determining the best interest of the child and the existence of a ground for termination, the Circuit Court shall consider the following factors:
>
> . . . .
>
> (c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition:
>
> > 1. Made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court; or
> >
> > 2. Provided a parent with a disability as defined in KRS 199.011 with targeted adaptive and supportive services based on an individual assessment of

---

[3] "[A] disposition order, not an adjudication order, is the final appealable order with regard to a decision of whether a child is dependent, neglected, or abused." *M.C. v. Cabinet for Health and Family Services*, 614 S.W.3d 915, 921 (Ky. 2021) (internal quotation marks and citation omitted).

the parent, or has received a
written acknowledgement from
the parent knowingly and
affirmatively rejecting the
offered services[.]

Mother contends she completed the tasks contained in her case plan to the best of her ability and that CHFS failed to provide her with the services needed to reunite her with her children. The circuit court found that CHFS had "made appropriate referrals to mental health assessments, substance abuse assessment/counseling, parenting classes, parenting assessment, random drug screens, supervised visitation sessions and various other services." Findings of Fact and Conclusions of Law at 8. However, the circuit court also found that Mother:

[D]id not engage in her mental health assessment, did not complete her detailed parenting assessment, did not engage in any substance abuse treatment following her positive drug screens, has not achieved and maintained sobriety having both repeatedly tested positive for cannabis and repeatedly no showing to a number of drug screens; and has not engaged in regular supervised visitation with the last visit with [K.L.E.] being in December 2024 and with visits for [J.E.C.] being spread a few months apart.

Although Respondent, [Mother] testified she is employed, trying to arrange for child support, and living with a male partner and his mother whom she testified have agreed to take the children in, these efforts fail to overcome [Mother's] previous failures to visit the children, complete tasks and prepare herself to receive the children over the last two (2) years.

-7-

Findings of Fact and Conclusions of Law at 9. The circuit court also found that Mother owed $6,870 in child support arrearages.

The circuit court's findings are supported by substantial evidence; particularly the testimony of CHFS social worker, Leiha Bohannon, but also by Mother's own testimony. When asked what her plans were if the court did not terminate her parental rights, Mother testified that she would complete her case plan. VR 2/24/25 beginning at 3:01:19. In other words, Mother acknowledged she had not completed her case plan nearly three years after the children had been placed in the custody of CHFS. Mother failed to find stable housing and was living with her current paramour and his mother in the mother's trailer without any type of formal rental agreement; meaning Mother's housing situation was completely out of her control. Bohannon testified that Mother did not have stable housing since the filing of the underlying DNA petition, and oftentimes would not disclose where she was living. Bohannon also testified Mother continually tested positive for marijuana or failed to show up for her drug screens. Mother also failed to engage in any of the substance abuse services offered by CHFS.

Mother also points out that her testimony was "essentially antithetical" to Bohannon's with regard to the facts of the case and asserts that the circuit court erred in not believing she was clean, sober, and ready, willing and able to have the children returned to her. Appellant's Brief at 2. We remind Mother that "[i]t is

within the province of the fact-finder to determine the credibility of witnesses and the weight to be given the evidence." *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 118 (Ky. 1991) (citation omitted). In this case, the circuit court clearly believed Bohannon's testimony over Mother's.

Finally, we note that, although not framed and elaborated upon like her other arguments, Mother points out the fact that the permanency goal remained return to parent in the district court proceedings. Although Bohannon testified the permanency goal was eventually changed to adoption, this is not reflected in the DNA records before this Court. It is therefore unclear whether the permanency goal was ever changed by the district court. Nevertheless, in *Commonwealth, Cabinet for Health and Family Services v. C.V.*, 192 S.W.3d 703, 704 (Ky. App. 2006), this Court determined that CHFS was *not* required to amend its permanency goal in district court before filing a petition for termination of parental rights in circuit court.

Based upon our review of the record, including the thorough Findings of Fact and Conclusions of Law made by the circuit court, the court's findings are supported by substantial evidence and otherwise not clearly erroneous. Likewise, the court's finding that termination of parental rights is in the best interest of the children is supported by the record and in accordance with applicable law.

Accordingly, and for the foregoing reasons, the orders of the Grayson Circuit Court terminating S.J.H.'s parental rights are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Alton L. Cannon
Leitchfield, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Leslie M. Laupp
Covington, Kentucky