v.

**CABINET FOR HEALTH AND FAMILY SERVICES, Commonwealth of Kentucky, as Next Friend of B.B.L., a Child; and B.B.L., an Infant**

and

Cabinet for Health and Family Services, Commonwealth of Kentucky, as Next Friend of H.A.C., a Child; and H.A.C., a Child Appellees.

Nos. 2012–CA–002021–ME, 2012–CA–002022–ME.

Court of Appeals of Kentucky.

Sept. 13, 2013.

---

30. *Id.*, at *8.

31. *Id.*

32. *Id.*

33. *Id.*

Eldred E. Adams, Jr., Louisa, KY, for Appellant.

David T. Adams, Paintsville, KY, for Appellees Cabinet for Health and Family Services.

Before ACREE, Chief Judge; LAMBERT and STUMBO, Judges.

*OPINION*

LAMBERT, Judge:

M.L.C. appeals from the Lawrence Family Court's June 28, 2012, orders terminating her parental rights to her children, B.B.L. and H.A.C. After careful review of the record, we vacate the orders of the trial court and remand for proceedings consistent with this opinion.

When M.L.C. was eighteen, she committed a robbery with her boyfriend in West Virginia, for which she pled guilty and received a twenty-year sentence. She is now serving that sentence at the Lakin Correctional Center for Women in West Columbia, West Virginia. She has been before the parole board twice but has not yet been released. She could potentially meet with the parole board again in a few months. M.L.C. is scheduled for release in April 2015, if she is not paroled sooner.

At the time of the hearing in the instant matter, M.L.C. was twenty-six years old and had spent her entire adult life in prison. She has taken the opportunity to get her GED and has completed thirteen education classes and earned six college credit hours. She has also completed several drug classes and is now enrolled in the institution's one-year drug program. She has been accepted to four colleges pending her release from prison and has obtained approval for financial aid accordingly.

On March 18, 2009, M.L.C.'s two children were placed in foster care by the Lawrence Family Court. The children had been residing with M.L.C.'s mother prior to placement with the Cabinet for Health and Family Services (Cabinet). On or about April 17, 2009, B.B.L. was adjudicated to be neglected and was committed to the Cabinet. On or about April 20, 2009, H.A.C. was adjudicated to be neglected and was also committed to the Cabinet. At the time of the hearing on this matter, the children had been in foster care for over three years.

During the time the children were in foster care, M.L.C. sent them eight cards or letters and two gifts, one for each child. She also wrote four letters to the case worker. At the hearing, M.L.C. testified by telephone that she receives $36.90 in state pay per month, which she uses to pay for soap, shampoo, conditioner, deodorant, and a book of stamps. M.L.C. stated that if a court order were issued, an additional ten percent of her pay could be sent directly to the state for child support. During the hearing, the Cabinet emphasized that M.L.C. had not visited with her children; however the social worker did testify on cross-examination that the foster parents were not required to take the children outside the Commonwealth of Kentucky for visitation with M.L.C. M.L.C. testified that she had inquired with the caseworker several times about visitation with the children and had asked if the children were receiving her letters, as she had not received anything back from the children. She testified that she has weekly contact with an older son, who is in the care of her grandmother, and explained that she has maintained a relationship with him. Her testimony indicated that she wants what is best for her other two children, and she understands that she will need help reuniting with them and parenting them once she is released from prison. She testified that she does not want to lose all contact with her children.

At the conclusion of the termination hearing, the Lawrence Family Court terminated M.L.C.'s parental rights to B.B.L. and H.A.C. M.L.C. filed a motion to alter, amend, or vacate the judgment and a motion for the trial court to make additional

findings of fact. The trial court denied the motion to alter, amend, or vacate on October 9, 2012, and did not make a ruling on the motion for additional factual findings. This appeal now follows.

M.L.C. first argues that the trial court erred by not continuing the termination hearing until she was released from custody. M.L.C. filed a motion for a continuation and objected to conducting the proceedings by speakerphone. The trial court ordered briefing on the issue of M.L.C. testifying in a termination proceeding by telephone. Neither counsel was able to find a Kentucky case relating to whether or not a termination proceeding may be conducted with the parent only appearing by speakerphone.

However, the Cabinet points to an unpublished case, *J.W. v. Cabinet for Health and Family Services*, 2010 WL 3189597 (Ky.App.2010), wherein this Court considered a case where a mother's parental rights were terminated after testimony by telephone, while the mother was incarcerated. This Court stated, "The record discloses that the trial court telephoned the penal institution where the mother was incarcerated and used a speakerphone during the hearing. Mother was able to hear all witnesses and communicate with counsel. While she was not physically present, her presence by telephone was sufficient." *Id.* at *2.

M.L.C. argues that the issue is one of first impression, as *J.W.* is unpublished and the real issue in that case dealt with whether the Guardian Ad Litem (GAL) rendered ineffective assistance of counsel by failing to keep the mother adequately informed of the proceedings. Thus, she urges this Court to address the issue as one of first impression in Kentucky.

The Cabinet argues that foster care was intended to be temporary, not a permanent living situation. *See Cabinet for Families and Children v. G.C.W.*, 139 S.W.3d 172 (Ky.App.2004). The Cabinet argues that Congress overwhelmingly passed the Adoption and Safe Families Act in 1997 to expedite the adoption of children in foster care and to address the phenomenon known as foster care drift. The Cabinet also argues that further delays like the ones that have already occurred in the instant case will only negatively affect the children.

■■■ We agree with the Cabinet that the children having a safe and stable home and not lingering in the foster care system is of utmost importance. That idea is supported by the termination process in this Commonwealth, as well as by the Adoption and Safe Families Act. Further, we agree with the prior panel of this Court's analysis in *J.W., supra*, that in certain circumstances such as the case at bar, it is appropriate for a parent to testify by telephone in a termination proceeding, as long as there is adequate notice of the proceedings and adequate time for the parent to testify, be cross-examined, and to fully participate in the hearing process. In the instant case, had M.L.C. been present in person to testify, her testimony would have been the same—that she had little contact with her children over the years she was incarcerated but wished to maintain contact with them and be reunified with them once she was released from incarceration. Thus, we find no error in the trial court's denial of a continuance in this case.

■■■ M.L.C. next argues that the findings of fact made by the trial court in support of the termination were insufficient under CR 52.02. She argues that the trial court simply parroted the legal requirements for termination and that the trial court's order did not contain the requisite findings of fact.

The Cabinet argues that M.L.C. did file a motion to alter, amend, or vacate the judgment and for the trial court to make additional findings of fact. However, the Cabinet points out that when oral arguments were made, M.L.C. only argued her motion to alter, amend, or vacate and abandoned her motion for additional factual findings. Thus, the Cabinet argues that this argument is waived. In the alternative, the Cabinet urges this Court to conclude that the findings of the trial court are sufficient and should be upheld.

Our standard of review in termination of parental rights cases is set forth in *M.P.S. v. Cabinet for Human Resources,* 979 S.W.2d 114, 116–17 (Ky.App. 1998):

> The trial court has a great deal of discretion in determining whether the child fits within the abused or neglected category and whether the abuse or neglect warrants termination. *Department for Human Resources v. Moore,* Ky.App., 552 S.W.2d 672, 675 (1977). This Court's standard of review in a termination of parental rights action is confined to the clearly erroneous standard in CR 52.01 based upon clear and convincing evidence, and the findings of the trial court will not be disturbed unless there exists no substantial evidence in the record to support its findings. *V.S. v. Commonwealth, Cabinet for Human Resources,* Ky.App., 706 S.W.2d 420, 424 (1986).

> "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *Rowland v. Holt,* 253 Ky. 718, 726, 70 S.W.2d 5, 9 (1934).

The General Assembly provided the mechanism for the involuntary termination of parental rights in KRS 625.090. Pursuant to this statute, the Cabinet must meet a three-prong test and establish that 1) the child is abused or neglected; 2) termination would be in the child's best interest; and 3) one of several listed grounds exists. In deciding the second and third prongs, the circuit court is required to consider several enumerated factors, including "[i]f the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents[.]" KRS 625.090(3)(c).

We agree with M.L.C. that the trial court's findings of fact are not sufficient in this regard and are not supported by clear and convincing evidence. A review of the record indicates that the trial court did in fact parrot the legal language required in KRS 625.090 and did not explain or cite to any specific evidence which supported its decision regarding any of the factors. For instance, the trial court did not detail any reunification efforts made by the Cabinet to reunite M.L.C. with her children. The only testimony regarding this was the caseworker's testimony that the foster parents were not required to bring the children for visitation because they resided in another state. There was no other testimony regarding the trial court's reasoning in this regard. Further, and perhaps most importantly, there was no support whatsoever for the trial court's determination that termination of parental rights was in the children's best interests. Without clear and convincing evidence in support of its findings, the trial court's ruling amounts to an abuse of discretion. Further, as M.L.C. points out, without any other evidence to support its reasoning, it does appear to this Court that the trial court relied solely on M.L.C.'s incarceration as grounds for termination, which this Court specifically determined was in error

in *J.H. v. Cabinet for Human Resources,* 704 S.W.2d 661, 663 (Ky.App.1986) ("Incarceration alone can never be construed as abandonment as a matter of law."). Instead, as the Kentucky Supreme Court stated in *Cabinet for Human Resources v. Rogeski,* 909 S.W.2d 660, 661 (Ky.1995), incarceration is just one factor to be considered when determining whether to terminate parental rights.

Because the trial court did not provide ample support for its findings of fact and conclusions of law and appears to have relied primarily on M.L.C.'s incarceration alone, we vacate the trial court's order and remand for proceedings consistent with this opinion.

ALL CONCUR.