RENDERED:  FEBRUARY 20, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0780-ME

A.B.                                                                APPELLANT

v.                    APPEAL FROM JEFFERSON CIRCUIT COURT
                           FAMILY COURT DIVISION
                 HONORABLE SHELLEY M. SANTRY, JUDGE
                         ACTION NO. 24-AD-500284

G.M.E.; E.D.B., A MINOR CHILD;
AND T.B.                                                            APPELLEES

OPINION AFFIRMING IN PART AND
VACATING AND REMANDING IN PART

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE:  Appellant (Father)[1] appeals the Order of the Jefferson Family

Court which granted the adoption petition by Appellee (Grandmother), allowing

her to adopt his minor child (Child).  Father argues the family court failed to

---

[1] We remind counsel for Father that RAP (Kentucky Rules of Appellate Procedure) 34(A) requires citation to the pages of the official record.  This rule is not satisfied when counsel attaches items to her brief  and cites only to the attachments.  *W.I.S. v. K.M.B.*, 722 S.W.3d 569, 572 (Ky. App. 2025).

strictly follow the statutory requirements of KRS[2] Chapter 199, and he further

challenges the sufficiency of the evidence used to terminate his parental rights.

After a review of the record and the applicable law, we affirm in part and vacate

and remand in part for the entry of a new order containing required findings of

fact.

## FACTUAL AND PROCEDURAL HISTORY

This is the second appeal regarding Grandmother's attempt to adopt

Child. In the first appeal, this Court vacated and remanded the family court's

termination of parental rights, because Grandmother filed her petition under KRS

Chapter 625[3] rather than Chapter 199,[4] and the family court proceeded under KRS

Chapter 625. Grandmother lacked standing to file a petition to terminate Father's

parental rights under KRS Chapter 625 as a precursor for an adoption.

> While it might be tempting to characterize the errors in
> this case as harmless and presume that the requirements
> exist, when dealing with adoption "[n]othing can be
> assumed, presumed, or inferred[.]" *Day v. Day*, 937
> S.W.2d 717, 719 (Ky. 1997). "Since adoption is a
> statutory right which severs forever the parental
> relationship, Kentucky courts have required strict
> compliance with the procedures provided in order to
> protect the rights of the natural parents." *Id.*

---

[2] Kentucky Revised Statutes.

[3] Termination of Parental Rights.

[4] Adoption.

*A.B. v. Cabinet for Health & Fam. Servs.*, No. 2022-CA-1473-ME, 2023 WL 7238844, at *3 (Ky. App. Nov. 3, 2023).

Subsequent to our remand to the family court, Grandmother filed a proper adoption petition which would have the effect of terminating Father's parental rights under KRS Chapter 199. The family court held a hearing on March 7, 2025, and issued its Order on May 21, 2025, granting Grandmother's petition. Father then timely filed this appeal.

## STANDARD OF REVIEW

"Because adoption is a statutory right, Kentucky Courts require strict compliance with the statutory procedures to protect the rights of natural parents." *R.M. v. R.B.*, 281 S.W.3d 293, 297 (Ky. App. 2009). "An adoption without the consent of a living biological parent is, in effect, a proceeding to terminate that parent's parental rights." *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 359 (Ky. 2022). We therefore apply the same standard of review of a termination of parental rights case, which is the clearly erroneous standard outlined in CR[5] 52.01. The factual findings must be supported by clear and convincing evidence. *Id.*

"Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people.

---

[5] Kentucky Rules of Civil Procedure.

Under this standard, we are obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them." *M.S.S.*, 638 S.W.3d at 360.

## ANALYSIS

Father argues the family court again erred in its order granting Grandmother's adoption petition. He claims the family court did not strictly follow the statutory requirements of KRS Chapter 199, and he further argues there was not clear and convincing evidence to support adoption with its concomitant termination of Father's parental rights.

Father says the family court's order granting the adoption does not comply with KRS 199.520(1), which states:

> After hearing the case, the court shall enter a judgment of adoption, if it finds that the facts stated in the petition were established; that all legal requirements, including jurisdiction, relating to the adoption have been complied with; that the petitioners are of good moral character, of reputable standing in the community and of ability to properly maintain and educate the child; and that the best interest of the child will be promoted by the adoption and that the child is suitable for adoption. In the judgment, the name of the child shall be changed to conform with the prayer of the petition. The judgment and all orders required to be entered and recorded in the order book, including the caption, shall contain only the names of the petitioners and the proposed adopted name of the child, without any reference to its former name or the names of its birth parents.

Father contends the family court's order does not contain these findings. Father is correct. The order issued by the family court does not state that the facts in the Petition were established, the jurisdictional requirements were met, that Grandmother is of good moral character, of reputable standing in the community, that she has the ability to maintain and educate Child, or that Child's best interest will be promoted by the adoption. These are required findings under KRS 199.520(1). *A.K.H v. J.D.C.*, 619 S.W.3d 425, 431 (Ky. App. 2021).

It is arguably equally erroneous when a family court just parrots the wording of the statute without further explanation or support, which some courts have done. What is required is a statement that each of the statutory findings has been made and what supports that finding. *See M.L.C. v. Cabinet for Health and Family Services*, 411 S.W.3d 761 (Ky. App. 2013). For some of the required findings nothing further needs to be said in addition to the fact itself. For example, the facts within the Petition are either established or not by the evidence of record. Jurisdiction either exists or does not.

But for other facts, evidentiary support must be explained. We could infer that Grandmother has the ability to maintain and educate Child because of factual statements made by the family court about how Grandmother had provided for the Child for years. But appellate courts cannot be in the habit of inferring factual findings, especially in the context of adoptions, where strict compliance is

-5-

required. For such findings, especially the best interests of the child, which is the dominant guide for adoption decisions, the family court must make the statutory factual statements and then support them with underlying facts and the evidence for those facts.

All factual findings in an adoption must be supported by clear and convincing evidence. To illustrate that the law has been followed, the family court must state in its written findings that this standard of proof has been applied and then state for each statutory finding why that finding was made. The final order could begin with the preface of "the Court finds by clear and convincing evidence as follows: . . . ."

As to some of the required factual findings, a family court could say for instance that "the Petitioner has provided the majority of support for Child for well over five years. Parent has abandoned Child. Child is used to living with Petitioner and has adjusted to Child's school and home environment. The Petitioner has the ability to maintain and educate Child. It is in the best interests of Child for the adoption to be granted." We do not mean to dictate specific findings for this case, we merely illustrate succinctly the process of stating required statutory findings of fact and support for them.

Because of the absence of required findings of fact, we are compelled again to vacate and remand to the family court to enter a new order with the

requisite findings. We do not direct any new hearing. That is a matter for the family court to decide. The existing record may be sufficient for the family court to make the needed findings. In particular, the family court properly stated in its order that Father had abandoned child or otherwise not provided support, and the family court cited specific sections of KRS Chapter 199 with its findings. As we will address later in this Opinion, these findings were clearly stated and supported by clear and convincing evidence. They do not need to be readdressed.

Father also argues that KRS 199.510(1) was not strictly followed. This statute states:

> (1) Upon filing a petition for the adoption of a minor child, the clerk of the court shall forward two (2) copies of the petition to the cabinet. The cabinet, or any person, agency or institution designated by it or the court shall, *to the extent of available facilities*, investigate and report in writing to the court:
>
> > (a) Whether the contents of the petition required by KRS 199.490 are true;
> >
> > (b) Whether the proposed adoptive parents are financially able and morally fit to have the care, custody and training of the child; and
> >
> > (c) Whether the adoption is to the best interest of the child and the child is suitable for adoption.

(Emphasis added.)

Father makes a similar insufficiency argument regarding the report of the Cabinet for Health and Family Services (Cabinet); he claims the report filed did

not contain the requisite requirements and recommendations. While some of the exact statutory language is not in the Cabinet's report, the statements made therein are sufficient to meet the requirements of the statute.

In the cover letter to the family court, which was included as part of the report, the Cabinet states, "Please provide notice that the Cabinet for Families and Children recommends that the petition be granted and all the legal requirements have been met."[6] The report itself states, "[Grandmother] states that her incomes [sic] is sufficient to meet her expenses. She further states that the adoption will not be a financial hardship and will not cause a change to her income."[7] And further, "[Child] is secure, well adjusted, and adaptable. [Child]'s needs are being met and he does not pose a threat to the health, safety, or well-being of himself or others."[8] "[Child] stated that he feels safe at home and is not scared of anyone."[9] And finally, "Based on the information gathered from the family, this adoption appears to be in the best interest of [Child]. It is the recommendation of the Cabinet for Health and Family Services, Commonwealth of

---

[6] Cover letter of Amended Confidential Report, Petitioner's Exhibit 3.

[7] Amended Confidential Report, Page 1, Petitioner's Exhibit 3.

[8] *Id.* Page 2 of Report.

[9] *Id.*

Kentucky that this adoption be granted, provided all legal requirements have been met."[10]

While best practice might be to include the exact statutory language of KRS 199.510(1)(a)-(c) in the report as a guide to show that the requirements were understood and followed, the Cabinet's report here was sufficient. The Cabinet fulfilled its duty of performing an investigation, and its conclusion is clearly stated. More to the point, the Cabinet does not make required findings: it merely reports to the family court which must make the findings. Should the family court here wish to have the Cabinet revise or file a new report, that is up to that court upon remand.

Father's final argument is that there was no clear and convincing evidence presented to support a judgment of adoption. The family court found that KRS 199.502(1), sections (a), (e), and (g) applied. These provisions state:

> (1) Notwithstanding the provisions of KRS 199.500(1), an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the following conditions exist with respect to the child:
>
> > (a) That the parent has abandoned the child for a period of not less than ninety (90) days; . . .
> >
> > (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no

---

[10] *Id.*

reasonable expectation of improvement in parental care and protection, considering the age of the child; . . .

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]

Father argues it was erroneous for the family court to find he had abandoned Child. We disagree. "For the purposes of Chapter 199, abandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 427 (Ky. App. 2015) (internal quotation marks omitted).

Child was born near the end of 2013. At some point in 2014 or 2015, Child's mother[11] took him to Missouri, and they were residing there. Mother was arrested, and Child went into foster care in Missouri. In 2017, Grandmother became aware that Child was in foster care in Missouri, and she was able to intervene in the Missouri court action in August 2017. She was granted temporary custody of Child in December 2017, and Child came to live with her on Christmas

---

[11] Mother voluntarily consented to the adoption, and she did not participate in the underlying proceedings.

Day of 2017. Child has resided with Grandmother ever since. In 2018, she was granted permanent custody of Child, and the Missouri case was closed. Had Grandmother not intervened when she did, Child would have been adopted by his foster family in Missouri.

Grandmother testified that while the Missouri case was open, Father was granted only supervised visitation with Child. Grandmother has financially supported Child since she obtained custody of him in 2017. She stated that Father would sometimes send money to assist, but it was never consistent. He also provided some clothing and shoes for Child, as well as some gifts over the years.

Grandmother testified that the last time Father saw Child was on Easter 2022, at which time she claimed Father showed up drunk to her home and made a scene. She told him to leave and not to come back to her home. Grandmother claims Father is an alcoholic who refuses to take accountability for his behavior.

As we have noted, Grandmother filed the ill-fated petition for termination of Father's paternal rights in May 2021. During the pendency of the termination action, Father filed a custody action in February 2022. That was the first time Father filed any legal action in an attempt to gain custody or parenting time with Child.

Father testified that Grandmother would not allow him to see Child. He denies having any problems with alcohol, and he denies the Easter 2022 incident ever happened. Father argues he has no relationship with Grandmother (his own mother), and he claims she has never seen him drunk. Father further claims he has sent $70 per week to Grandmother in support for the past eight years; he alleges that is the amount Grandmother requested, as there is no court order for child support.

Father acknowledged that two evaluations were performed out of the Missouri case regarding Child, and that he was denied placement on both occasions. He also conceded he was never granted more than supervised visitation in Missouri, but he argues the case was closed because Grandmother was awarded custody, not because of anything he did or did not do.

At some point in the early stages of Father's 2022 custody case, Father was granted therapeutic visitation only. These visitations did not occur. Then, the family court granted the petition to terminate his parental rights in the previous action. This Court rendered its opinion vacating that termination order in November 2023.

Father then filed another motion for visitation in December 2023. He was again ordered to begin therapeutic visitation. In his testimony, Father stated he reached out to the therapist but was never able to set up an appointment.

Because of that, the ordered therapy and related visits never began. Father acknowledged in his testimony that he only made *one* phone call to the therapist. Nothing else was filed in the custody action until October 2024. In the meantime, the petition for adoption in this action was filed in August 2024.

We agree with the family court that the evidence presented is sufficiently clear and convincing evidence of abandonment. While Father testified to the contrary, the family court accepted Grandmother's testimony that Father has not seen Child since 2022. Prior to that, Father made no effort to file any legal action to have any visitation with Child until after a termination of parental rights action had been filed. Grandmother has had legal custody of Child since December 2017; Father did not file any action until 2022. While Grandmother conceded that she told Father to stay away from her home, Father had many years to file an action to attempt to see Child. When asked why he did not file a custody action sooner, Father merely expressed reluctance to take his own mother to court. Father also conceded that had Grandmother not intervened in the Missouri court action, Child would have been adopted by his foster family in Missouri in 2017. This is clear evidence of abandonment as far back as 2017.

Father testified he sent regular support in the amount of $70 per week; Grandmother testified Father sent sporadic payments. In light of this conflicting testimony, the family court left the record open to allow Father to supplement with

-13-

proof of payments made. The family court determined that Father was unable to prove the almost $29,000 he claimed to have provided; he was able to show he sent only approximately $5,500 to Grandmother. Payment or nonpayment of support is not the only dispositive factor in determining abandonment. "Nonsupport is a factor to be considered—although it does not constitute abandonment *per se.* On the other hand, sporadic payment of child support does not necessarily indicate that a person did not abandon his child." *R.P., Jr.*, 469 S.W.3d at 427 (citation omitted).

There was and is clear animosity between the parties in this action, as well as diametrically opposed testimony about events that occurred. The family court simply found Grandmother to be more credible. It is within the family court's purview to weigh the credibility of the witnesses. *Baird v. Baird*, 234 S.W.3d 385, 388 (Ky. App. 2007).

Because only one finding is required under KRS 199.502(1) and we have determined there is clear and convincing evidence to support abandonment, we find it unnecessary to lengthen this Opinion by analyzing further the other two statutory facts properly found by the family court under KRS 199.502(1). Additionally, while not addressed by the parties, we see that the family court's order is noncompliant with the final sentence of KRS 199.520(1), as the order contains the names of the biological parents. On remand, the family court is to

take particular care to enter an order that includes all statutorily required findings of fact, as well as following other requirements of the statute such as not including prohibited information.

## CONCLUSION

The findings under KRS 199.502(1) are sufficiently stated and supported by clear and convincing evidence of record; those findings are AFFIRMED. But for the reasons stated, the Order granting a judgment of adoption is VACATED, and the case is REMANDED to the Jefferson Family Court for further fact-finding and analysis to satisfy KRS 199.520(1).


ALL CONCUR.


BRIEF FOR APPELLANT:          BRIEF FOR APPELLEE G.M.E.:

Bethanni Forbush-Moss        Peter J. Jannace
Louisville, Kentucky          Louisville, Kentucky