RENDERED:  MAY 29, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1385-ME

P.D.G.                                                                          APPELLANT

APPEAL FROM WARREN FAMILY COURT
v.       HONORABLE G. SIDNOR BRODERSON, JUDGE
ACTION NO. 25-AD-00015

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; C.E.C.; AND
S.C.E.C. II, A MINOR CHILD                                      APPELLEES

AND

NO. 2025-CA-1390-ME

P.D.G.                                                                          APPELLANT

APPEAL FROM WARREN FAMILY COURT
v.       HONORABLE G. SIDNOR BRODERSON, JUDGE
ACTION NO. 25-AD-00014

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; A.L.C.; AND
A.S.C., A MINOR CHILD                                          APPELLEES

AND

NO. 2025-CA-1392-ME

P.D.G.                                                        APPELLANT


                    APPEAL FROM WARREN FAMILY COURT
v.              HONORABLE G. SIDNOR BRODERSON, JUDGE
                        ACTION NO. 25-AD-00013


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; C.E.C.; AND
P.C.E.C. II, A MINOR CHILD                                    APPELLEES

AND

NO. 2025-CA-1393-ME

P.D.G.                                                        APPELLANT


                    APPEAL FROM WARREN FAMILY COURT
v.              HONORABLE G. SIDNOR BRODERSON, JUDGE
                        ACTION NO. 25-AD-00012


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; D.C.G., A
MINOR CHILD; AND L.J.M.                                       APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  CETRULO, McNEILL, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  This consolidated appeal is taken from the Warren Family Court's findings of fact, conclusions of law, and judgments terminating the parental rights of P.D.G. ("Mother") to her four minor children (collectively the "Children").[1]  Appointed counsel for Mother filed an *Anders*[2] brief in accordance with *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App. 2012), conceding that no meritorious assignment of error exists for appeal; requesting to withdraw as counsel; and providing Mother with the opportunity to file a *pro se* brief.  No *pro se* brief has been filed, and counsel's motion to withdraw is granted by separate order.  After independently examining the record and the law, we find no error and affirm the Warren Family Court's order terminating Mother's parental rights.

---

[1] To protect the privacy of the minor children and pursuant to court policy, we do not refer to the minor children nor their natural parents by name.  *See* Kentucky Rule of Appellate Procedure ("RAP") 5(B)(2).

[2] *Anders v. California*, 386 U.S. 738 (1967).

## FACTS AND PROCEDURAL HISTORY

In January 2023, the Cabinet for Health and Family Services ("Cabinet") received an investigative referral for concerns of neglect after the Children attended their elementary school unbathed and dressed in dirty clothes. The referral described how other students were bullying the Children because of their unpleasant odor and poor hygiene. The Children said their bathtub at home did not work, and school personnel gave them baby wipes to clean themselves in between classes. Justin Bostick, a social worker with the Cabinet ("SSW Bostick"), attempted to conduct a home visit, but no one answered the door, and he was unable to make any contact.

SSW Bostick went back to the home on February 10, 2023, in response to law enforcement's request for Cabinet assistance. Due to the conditions of the home, Mother was charged with criminal offenses stemming from the environmental neglect and placed under arrest.[3]

Upon his return to the house, SSW Bostick noted the stench from outside. Inside, SSW Bostick observed food, trash, and fecal matter littering the floors throughout the home. The bathroom toilet appeared clogged and inoperable, and dried vomit caked the bottom of the tub. The Children were removed from the

---

[3] In May 2024, Mother pleaded guilty to four counts of wanton endangerment in the first degree and sentenced to five years of imprisonment, probated for five years.

house and placed in police protective custody prior to SSW Bostick's arrival, but he was able to speak with Mother to investigate the availability of alternative placement for the Children given her arrest.

Mother was unable to identify any other relatives or caretakers who would be appropriate placements for the Children.[4]  With no other option to removal, the Cabinet sought and received emergency custody of the Children. SSW Bostick picked the Children up from the police station and placed them in foster care on February 10, where they would remain for the pendency of the case.

In April 2023, Mother stipulated to environmental neglect at the adjudication hearing, and in June 2023, the Children were committed to the Cabinet.  The Cabinet developed a case plan with Mother, which required her to maintain stable housing and employment, complete evaluations for substance abuse, mental health, and parenting and follow all recommendations, comply with call-ins for drug screens and submit for testing as requested, and cooperate with the Cabinet.  Mother made some progress with her case plan, such as completing parenting classes in June 2023.  She participated in her mental health assessment but failed to continue with recommended counseling and treatment.  Mother also

---

[4] Mother provided information for two individuals, her mother and her friend, but both of those individuals also resided at the home and were determined to be inappropriate placements.  The youngest child's father was incarcerated, the oldest child's father declined to be of any assistance, and the whereabouts of the other two children's father were unknown.

struggled to maintain stable housing and employment, often moving from motel to motel and cleaning other rooms in exchange for room and board.

Once in foster care, the effects from the Children's traumatic home life became immediately apparent. They displayed aggression and inappropriate sexual behaviors. Eventually, the Children had to be separated and placed in different foster homes and care facilities. The Cabinet enrolled the Children in mental health counseling and permitted Mother to have supervised visits. However, in July 2023, the Children's therapist recommended against further contact with Mother until she sought and obtained an additional mental health assessment and follow-up treatment. Contact between the Children was also curtailed following allegations of sexual abuse that occurred among the siblings while they were in Mother's custody.

By January 2025, Mother still had not completed her follow-up mental health assessment, and as a result, no contact had occurred between Mother and the Children since the summer of 2023. The Cabinet filed its petitions to terminate parental rights in February 2025. The family court appointed a guardian *ad litem* for the Children and a warning order attorney for the parents.[5]

---

[5] From the video record, it appears that status hearings were held on April 4, 2025 and May 1, 2025. Mother was not present for either hearing, but on May 1, the attorney for the Cabinet indicated that Mother received notice of the hearing and reached out to the clerk. The cases were continued for a hearing on September 12, 2025. On that date, Mother appeared with counsel, and the oldest child's father was present but unrepresented. The family court appointed an attorney for the father. After a recess, the father indicated that he had sufficient time to consult

-6-

The family court held the hearing for termination of parental rights on September 24, 2025. The Cabinet presented testimony from SSW Bostick and Emily Carter ("SSW Carter"), who was the family's ongoing Cabinet caseworker. SSW Bostick testified to his limited involvement in the case, which centered around the initial removal of the Children from Mother's custody. SSW Carter, on the other hand, became the primary caseworker in September 2023 and worked with the family up to the final hearing. She testified to inconsistent contact with Mother over this two-year period, and despite making multiple referrals to assist with completion of case plan goals, Mother made very little progress other than completing parenting classes in June 2023. SSW Carter testified that the Cabinet made all reasonable efforts to reunify the family, but that the Cabinet can only go so far, noting that it was up to Mother to follow through with resources made available.

SSW Carter also provided testimony regarding the Children and their respective struggles and progress while in Cabinet custody. At the time of the final hearing, the oldest child was in a foster home in Louisville, Kentucky, but that child was under investigation for sexual abuse. Another sibling was recently

---

with counsel and voluntarily agreed to terminate his parental rights. The cases were continued one last time for a final hearing on September 24, 2025. The other fathers were served by warning order and did not appear before the court. Their parental rights were terminated along with those of Mother, but this Opinion considers only the family court's termination of Mother's parental rights.

admitted to a psychiatric facility to address problems of aggression and allegations of sexual abuse. The two other siblings were in separate foster homes, but each had the potential for adoption. By the time of the final hearing on September 24, the Children had been in Cabinet custody for over 30 months.

Mother testified on her behalf. She stated that she lived in a one-bedroom suite at the motel where she worked. Mother said that she cleans rooms as needed at the motel, sometimes making up to $30 a day. She acknowledged this income was not enough to support herself and the Children. Mother discussed the possibility of getting a larger efficiency-type suite if her Children were returned, but also that she risked losing that housing and income if she missed a day of cleaning. She recently applied for more stable employment but had no offers as of the final hearing date.

Mother testified that she relies on public transit and would be able to get the Children to their appointments with the transportation assistance offered through Medicaid. However, Mother conceded that she was not able to meet the needs of her three oldest Children and believed they were not ready to return to her care. She indicated that she would be able to care for her youngest child if that child was doing well.

Regarding her case plan, Mother stated that she did not believe the Cabinet made reasonable efforts to assist her and maintained that she contacted

various places but did not receive responses. After two years without seeing her Children, she finally walked to Life Skills to seek services and scheduled a psychosocial evaluation for October 1, 2025.

For over three hours, the family court considered the evidence and arguments presented. Ruling from the bench, the court stated that the Children needed permanency and stability, neither of which Mother appeared capable of providing in the foreseeable future. The court walked through the required factors and concluded that terminating Mother's parental rights was in the best interest of the Children. Following the court's oral findings, written orders detailing the court's findings and conclusions for each child were entered on October 3, 2025.

## ANALYSIS

Mother's appointed counsel filed an *Anders* brief in compliance with *A.C.*, 362 S.W.3d 361. In *A.C.*, this Court adopted and applied the procedures identified in *Anders*, 386 U.S. 738, regarding appeals from orders terminating parental rights where counsel cannot identify any nonfrivolous grounds to appeal. *A.C.*, 362 S.W.3d at 371. Those procedures require counsel to first engage in a thorough and good faith review of the record. *Id.* "[I]f counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." *Id.* at 364 (quoting *Anders*, 386 U.S. at 744).

Mother's appointed counsel complied with the requirements of *A.C.* and *Anders* by providing Mother with a copy of the brief and informing her of her right to file a *pro se* brief raising any issues she found meritorious. *See A.C.*, 362 S.W.3d at 371. Mother has not filed a *pro se* brief. Per *A.C.*, we have closely examined the record and the law and agree with counsel that no grounds exist that would warrant reversing the family court's order terminating Mother's parental rights.

The applicable standard of appellate review of findings by the family court in a termination of parental rights case is the clearly erroneous standard; therefore, the findings of fact will not be set aside unless unsupported by substantial evidence. *M.L.C. v. Cabinet for Health & Fam. Servs.*, 411 S.W.3d 761, 765 (Ky. App. 2013); CR[6] 52.01. A family court has broad discretion in determining whether the best interests of the child warrant termination of parental rights. *C.J.M. v. Cabinet for Health & Fam. Servs.*, 389 S.W.3d 155, 160 (Ky. App. 2012).

KRS[7] 625.090 sets forth the requirements that must be met before a family court may involuntarily terminate parental rights. First, the family court must determine whether the child is abused or neglected or whether the child was

---

[6] Kentucky Rule of Civil Procedure.

[7] Kentucky Revised Statute.

previously determined to be abused or neglected by a court of competent jurisdiction. KRS 625.090(1)(a). Additionally, a petition seeking the termination of parental rights must have been filed by the Cabinet pursuant to KRS 620.180 or 625.050. KRS 625.090(1)(b). Second, the family court must find that the termination of parental rights would be in the child's best interest. KRS 625.090(1)(c). Third, the family court must find the existence of one or more of the eleven grounds set forth in KRS 625.090(2)(a)-(k). When determining the best interest of the child and the existence of a ground for termination, the court must consider the list of factors provided in KRS 625.090(3). Finally, the findings required by KRS 625.090(1)-(2) must be established by clear and convincing evidence.

In the matter before us, each of the statutory requirements was met. The family court made the findings required in KRS 625.090 by clear and convincing evidence, specifically including that (1) the Children were abused and neglected; (2) termination of parental rights was in the Children's best interests; and (3) the existence of at least one ground of parental unfitness. Based on our review of the record, substantial evidence supports the family court's factual findings on these matters. *See M.L.C.*, 411 S.W.3d at 765 (quoting *M.P.S. v. Cabinet for Human Res.*, 979 S.W.2d 114, 116-17 (Ky. App. 1998)). The family

court also appropriately considered the factors listed in KRS 625.090(3) in making those required findings.

Under the first element, KRS 625.090(1), the court found that the Children were abused and neglected under KRS 600.020(1) by clear and convincing evidence based on the following: (1) Mother's failure to provide essential parental care and protection to her Children, KRS 600.020(1)(a)4.; (2) Mother's failure to provide them with adequate care, supervision, food, clothing, shelter, education, or medical care; and (3) Mother's failure to make sufficient progress in her case plan goals to permit the Children's safe return to her care, resulting in their continued Cabinet commitment and foster care placements for 15 out of 48 months, KRS 600.020(1)(a)9.

Under the second factor, the family court considered the factors described in KRS 625.090(3) and found termination of parental rights to be in the Children's best interests. The court concluded that the Cabinet made reasonable efforts toward reunification with Mother, but to no avail.

Lastly, the family court found by clear and convincing evidence the existence of four grounds under KRS 625.090(2) warranting the termination of Mother's parental rights. For the first ground, the court held that Mother abandoned the Children for a period of no less than 90 days. KRS 625.090(2)(a). Second, Mother, for a period of no less than six months, continuously or repeatedly

failed, refused, or was substantially incapable of providing essential parental care and protection for the Children and there was no reasonable expectation of improvement considering the Children's ages. KRS 625.090(2)(e). Similarly, for the third ground, the court found that Mother, for reasons other than poverty alone, continuously or repeatedly failed or was incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the Children's well-being and that there was no reasonable expectation of significant improvement in Mother's conduct for the immediately foreseeable future, again considering the Children's ages. KRS 625.090(2)(g). Finally, the court observed that the Children were under the responsibility of the Cabinet and placed in foster care for 15 cumulative months out of 48 months preceding the filing of the petitions to terminate parental rights. KRS 625.090(2)(j).

Having considered the vast record on appeal, we find no error in the family court's findings and conclusions.

## CONCLUSION

The family court's conclusions are supported by substantial evidence, and all statutory requirements for involuntary termination of parental rights were met. No nonfrivolous grounds for appeal are found in the record. For these reasons, and with due regard to the serious consequences of involuntary termination, we find no error and AFFIRM the judgments on appeal.

ALL CONCUR.


BRIEF FOR APPELLANT:

James C. Jones II
Bowling Green, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Kevin Martz
Covington, Kentucky